In the Matter of the Application of JAY W. WOLFE, Petitioner, for the Removal of MERRILLS E. TRASK, Respondent, from the Office of Trustee of the Village of Lakewood.

Fourth Department, November 6, 1936.

*Alton R. Erickson*, for Jay W. Wolfe, petitioner.

*David L. Brunstrom*, for Merrills E. Trask, respondent.

CROSBY, J. Merrills E. Trask, a trustee of the village of Lakewood, has been accused of misconduct in office, and this proceeding was brought for his removal from office, pursuant to section 36 of the Public Officers Law, which reads, in part: " Any　*　*　* village　*　*　* officer　*　*　* may be removed from office by the Supreme Court for any misconduct, maladministration, malfeasance or malversation in office."

The section further provides that application for such removal " shall be made to the Appellate Division of the Supreme Court held within the judicial department embracing such　*　*　* village."

This proceeding was commenced upon the petition of Jay W. Wolfe, at one time clerk of the village of Lakewood. Three charges are made against Mr. Trask. They will be considered separately. In general he is accused of violating section 1868 of the Penal Law which reads as follows: " A public officer or school officer, who is authorized to sell or lease any property, or to make any contract in his official capacity, or to take part in making any such sale, lease or contract, who voluntarily becomes interested individually in such sale, lease or contract, directly or indirectly, except [in certain cases not here material], is guilty of a misdemeanor."

And section 332 of the Village Law provides, in part, as follows: "An officer shall not be directly or indirectly interested in a contract which he or a board of which he is a member is authorized to make on behalf of the village; nor in furnishing work or materials," etc.

The first charge of misconduct relates to Mr. Trask's acceptance of twenty-five dollars for his services and expenses in connection with the organization of certain territory, adjacent to the village of Lakewood, into a water district, in order that the village might extend the field of operation of its fire department and derive a revenue from the fire protection furnished to this outlying district. In addition to being a village trustee, Mr. Trask was chief of the fire department, and took a special interest in this new water district. The evidence is entirely clear that he secured an appointment as notary public to enable him to take acknowledgments to consents of property owners to the organization of the proposed water district, and that he spent his time freely in the effort to secure the organization of the water district, which now pays the village $240 a year for fire protection. He used his own car in going around to interest people in the organization of the water district, and in getting their consents. There is no suggestion in the evidence that Mr. Trask asked or expected any compensation for his services or even reimbursement for his expenses, until after the water district was formed, when the board of water commissioners of the village, whose personnel was entirely different from the village board, suggested "a donation" to Mr. Trask "for the services rendered or as compensation and reimbursement for expenses in connection with establishing this water district." Mr. Trask accepted that suggestion, and accepted twenty-five dollars from the village. As a matter of necessary form Mr. Trask had to make a formal, verified claim or voucher for the money, which he did, in effect claiming it as his due.

Nothing was ever said about it until an auditor from the State Department of Audit and Control criticized the transaction. It is true that the village should have paid none of the expenses of forming this water district, either to Trask or anybody else. The necessary expense of that proceeding was a charge against the property of water district and not against the village of Lakewood. (Town Law, § 202.)

In any case it cannot be said that Mr. Trask violated section 1868 of the Penal Law in this transaction. There was no "sale, lease or contract" involved. And even if there were, Mr. Trask was not "interested," in a sense condemned by the law. In a sense every good citizen should take a civic interest in all the

affairs of his village. Interest for personal gain is what the law condemns. There being no " sale, lease or contract " in which Mr. Trask was " interested " in any improper way, the most that can be said is that he accepted a gift made by the village in recognition of its moral obligation. Every public officer should be extremely meticulous to avoid even the appearance of evil, for, in the public service, to be suspected is nearly as destructive of confidence in government as to be guilty. We are not convinced that this transaction involves even a technical infraction of the law. Had Mr. Trask, as village trustee, been sent to a distant city to inspect, let us say, fire apparatus which the village thought to purchase, we doubt if the acceptance, from the village, of his actual expenses of travel would be illegal. There is no proof here that he was paid more than his expenses. The indications are that he was paid less. It is unfortunate that he made out his voucher for " services."

Only in a strained sense can Mr. Trask be said to have been " interested " in " furnishing work or materials " to the village in connection with the water district matter, in violation of section 332 of the Village Law. He " furnished no materials," he merely disbursed his own money for fees to become a notary public, and for motor fuel to operate his car, and it is quite clear that he received nothing for his " labor," the twenty-five dollars barely repaying him for his outlay. He was not serving the village any way, excepting indirectly. All proper expenses connected with the organization of a water district should have been paid by the district. Indirectly the village did derive a benefit, and it expressed its gratitude in a gift which, probably, it should not have offered and Mr. Trask should not have accepted. But we do not feel that, in this transaction, Mr. Trask was guilty of any violation of the law. Certainly no moral turpitude is involved.

A second charge against Mr. Trask is that he was interested in selling paint to the village, not directly, but through the street superintendent, one Marsh. Mr. Marsh was called as a witness by both sides. At the time of the trial herein, before a referee, Marsh was village clerk, and petitioner called him to prove certain records. When later called by the respondent, he told how he needed certain paint to paint over the exposed surfaces of limbs of shade trees where they had been trimmed, and that the kind of paint best adapted to that use could not be purchased in the open market, but had to be specially mixed for the purpose, and that Trask, a dealer in paint, knew how to mix the paint, and so he bought what paint he needed from Trask. Upon cross-examination

witness Marsh was asked: " Q. And Trask was selling it [paint] to the village? A. No, sir, he was not. Q. Who was he selling it to? A. Me. * * * Q. I mean did you tell him you would pay that? A. Yes, I told him I would pay it."

Marsh did pay it (the cost of the paint) after obtaining the money from the village on a voucher which Marsh presented.

Now, even though we concede that Trask knew that Marsh was buying the paint to use for village purposes, we doubt that he was guilty of breach of any law in selling to Marsh, on Marsh's credit. The danger, of course, is plain enough. This kind of dealing opens the way for connivance and secret agreements. But we can feel reasonably sure that there was no underhanded wrongdoing here, for the reason that the evidence is undisputed that Mr. Trask sold the paint materials at cost, and did the mixing gratis. Mr. Trask could have no improper motive for doing that.

The third charge has a semblance of merit, provided you accept the testimony of Solomonson at face value, and disregard all contradicting evidence. Solomonson was foreman on one of the alphabetical projects, painting the village hall. He had nothing to work with. Trask had everything — scaffolding, pulleys, ropes, drip cloths, etc., and he sold paint and brushes.

Practically the same thing happened here as happened in the transaction in which the street superintendent, Marsh, was involved, with this important exception: Solomonson testified: " Q. And you say that at that time you had some conversation with Merrills E. Trask regarding the use of some equipment on the village hall project? A. Yes, sir. Q. Will you state what that conversation was? A. Why, he came to me, he says, ' We are going to paint the village hall.' He says, ' We will go 50–50 and use your tools and mine,' and that was all. That was all that was said."

Later, on cross-examination he testified: " Q. But you didn't carry out the arrangement? All the equipment you used was Trask's, is that right? A. Yes."

Later he testified that the use of Trask's drip cloths alone, for a period of three months, was worth twenty-five dollars. Also in the equipment furnished by Trask were ten or twelve paint brushes which Solomonson says were worth twenty dollars, and that they were " practically used up." And included in the bill were one or two small items for paint materials, and there was the use of all the other equipment. Solomonson presented the voucher and claim to the village, and the whole bill was twenty-eight dollars and seventy-five cents, which the village paid to Solomonson, and the latter turned it over to Trask.

Leaving out of consideration Trask's denial of any corrupt arrangement with Solomonson, there are good reasons to conclude that there were no such arrangements. Solomonson worked by the day for three months on this job. He shared none of his pay with Trask. There is no proof that Trask ever asked him for any share of the sum that Solomonson received, or even hinted that he was entitled to it. And the evidence is overwhelming that, while Solomonson was making a considerable sum of money, Trask was furnishing equipment and materials at less than cost. We must concede that Trask knew that, in dealing with Solomonson, he was indirectly dealing with the village, and in this case, unlike the Marsh transaction, it is apparent that Trask did not rely on the credit of Solomonson; but he did not get, and it is certain, from the evidence, he did not seek, any profit either secret or open.

There are cases holding that public officers should not be removed for technical violation of the law where there was no corrupt motive and no profit made by the violation. (*Matter of Slack*, 234 App. Div. 7; *Matter of Luce* v. *Beiter*, 239 id. 23; *Matter of Mayor of Village of Lake George*, 242 id. 723.)

It is doubtful if the court should go so far as to condone a clear violation of the law, even though technical only, and without profit. In this case we do not find that there was even a technical violation of law except possibly in the transaction with Solomonson, and there is sufficient doubt about that so that the respondent should not be removed from office.

The official referee who conducted the trial, and saw the witnesses, recommends a dismissal of the petition, and we are of opinion that the petition should be dismissed.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Report of referee confirmed and petition for removal denied.